## J. W. Latimer and Wife v. St. Louis Southwestern Railway Company of Texas.

### Decided November 18, 1905.

**1.—Carrier of Passengers—Notice of Departure of Trains.**

In the absence of a request for the information it is not actionable negligence in a railway company to fail to inform one who has purchased a ticket over its road of the time of the departure of the earliest train upon which he can make the trip.

**3.—Same—Vestibuled Cars—Proximate Cause.**

Where a passenger was injured by the sudden and premature start of a train, throwing her from the steps of the car while she was attempting to alight at a station, negligence of the carrier in failing to have vestibuled cars was not a proximate cause of the injury, since the entrance to vestibuled cars must necessarily be kept open at stations.

**4.—Same—Passenger Alighting—Sudden Jerk.**

Evidence considered in a case where a passenger claimed to have been injured, while alighting from a train, by reason of a sudden jerk of the train, and held to present a conflict of evidence as to the carrier's negligence such as did not warrant the court in instructing a verdict for the defendant.

**4.—Court and Jury—Instructing Verdict—Negligence.**

The judge is authorized to take the case from the jury only where it is susceptible of but one just opinion, and where the facts are such that reasonable minds may differ upon the question as to whether or not there was negligence, the determination of the matter is for the jury.

Error from the District Court of Franklin. Tried below before Hon. P. A. Turner.

*R. E. Davenport* and *Wilkins & Vinson*, for plaintiffs in error.—The evidence showed that well regulated railroads ordinarily used vestibuled coaches in its trains; that defendant negligently failed to have its coaches on the train on which plaintiff was riding vestibuled, and that if the same had been vestibuled plaintiff could not have been thrown off and injured as she was, neither could she have jumped off. International & G. N. Ry. Co. v. Welch, 86 Texas, 204; International & G. N. Ry. Co. v. Halloren, 53 Texas, 53; Greenlee v. Southern Ry. Co., 41 Law Rep. Ann., 399; Newton v. Central Vt. Ry. Co., 5 Am. Neg. Cases, 596; Missouri Pac. Ry. Co. v. Bartlett, 16 S. W. Rep., 638; Texas Midland Ry. Co. v. Jumper, 60 S. W. Rep., 797; Thompson, Carriers of Pass., 215; Hutchison, Carriers, 427.

*E. B. Perkins* and *Glass, Estes & King*, for appellee.—1. It was not negligence for defendant in error to fail to have the platform of the passenger coach in which Mrs. Latimer was riding, vestibuled or enclosed. If it had been vestibuled, the evidence shows it was necessary that the door should have been open at the time Mrs. Latimer was injured, and that the failure to vestibule was not the proximate or direct cause of her injuries. Chicago, B. & Q. Ry. v. Hazzard, 26 Ill., 373; Messimer v. Philadelphia & R. R. Co., 17 Phila. (Pa.), 172; Felton v. Chicago, R. I. & P. Ry., 27 Am. & Eng. R. R. Cas., 231.

2.  Where the evidence, as in this case, is of such a conclusive character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it, and shows that the defendant is not liable, it is the duty of the trial court to instruct the jury to return a verdict in its favor.  Missouri, K. & T. Ry. Co. v. Perry, 27 S. W. Rep., 496; St. Louis S. W. Ry. Co. v. Martin, 63 S. W. Rep., 1089; Galveston, H. & S. A. Ry. Co. v. Mathes, 73 S. W. Rep., 411; Texas & Pac. Ry. Co. v. Woods, 28 S. W. Rep., 416; Texas Mid. Ry. Co. v. Terry, 65 S. W. Rep., 697; Denison & S. Ry. Co. v. Carter, 70 S. W. Rep., 322; Texas & Ft. S. Ry. Co. v. Atchison, 54 S. W. Rep., 1075; Texas & Pac. Ry. Co. v. Alexander, 30 S. W. Rep., 1113; Missouri, K. & T. Ry. Co. v. Highnote, 12 Texas Ct. Rep., 843; St. Louis S. W. Ry. Co. v. Haynes, 86 S. W. Rep., 934.

TALBOT, ASSOCIATE JUSTICE.—This is a suit to recover damages resulting from personal injuries received by Mrs. Charlstey Latimer, wife of J. W. Latimer, alleged to have been caused by the negligence of defendant in error's servants while Mrs. Latimer was a passenger on one of defendant in error's passenger trains.

It was alleged in substance that Mrs. Latimer and her four children were journeying from the State of Arkansas to Wolfe City, Texas; that they arrived in the city of Texarkana over the Iron Mountain and Southern Railway and there took passage over defendant in error's line of railroad for Commerce, Texas; that they reached Texarkana about 7 o'clock in the morning, and the first passenger train leaving there over defendant in error's road for Commerce and the one Mrs. Latimer should have taken left about 9 o'clock a. m.; that she did not then know the time of the departure of this train, and that defendant in error's agents at Texarkana negligently failed to notify her of such time, by reason of which she missed said train and was forced to remain in Texarkana about twelve hours and take a night train; that during the night and after the train upon which Mrs. Latimer was traveling left Mt. Pleasant and before it reached Mt. Vernon, she asked the conductor in charge of said train to assist her in changing cars at Commerce and to see her and her children safely on the train going to Wolfe City, which he promised to do, and then and there negligently told her that the next station was Commerce when in fact it was Mt. Vernon, and failed to correct said statement; that relying on the statement of the conductor that the next station was Commerce, and not then knowing that it was not, she awakened her children, who were asleep, preparatory to leaving the train when said station should be reached; that when the train reached Mt. Vernon neither the conductor nor any other servant of defendant in error came to the assistance of Mrs. Latimer, and thinking she had reached Commerce Mrs. Latimer, with her baby in her arms and the three other children following, proceeded to the platform of the car to alight; that when she reached the platform no servant of defendant in error was present; that she looked for the conductor to assist her off and while so looking and standing on the platform of the car the same was negligently caused to move forward with a lurch or jerk and threw her to the ground, resulting in serious and permanent injuries to her. It was further alleged that the train was not stopped

at Mt. Vernon a reasonably sufficient length of time to enable passengers to alight therefrom in safety, and that defendant in error negligently failed to vestibule or otherwise enclose and keep the platform of its coaches enclosed so as to prevent passengers from falling therefrom.

The defendant in error pleaded, among other things, a general denial and specially that when its train approached Mt. Vernon the name of the station was announced in a clear, distinct and audible voice, but that Mrs. Latimer was asleep and failed to hear it; that the train stopped at Mt. Vernon a sufficient length of time to enable the passengers to alight therefrom; that Mrs. Latimer stepped or jumped from the platform of the car in which she was riding after the train had been put in motion and while it was moving.

A jury was empaneled and after the introduction of all the evidence the court, upon motion of the defendant, instructed them to return a verdict for the defendant, which was done and judgment entered in accordance therewith. From this judgment plaintiffs in error prosecute this appeal.

The first and second assignments of error are as follows: First, "The court erred in instructing the jury to return a verdict in favor of the defendant." Second, "The court erred in rendering judgment for the defendant and against plaintiffs." Appropriate propositions accompany these assignments and present for decision the question, was the evidence adduced sufficient to require the submission of the case to the jury upon all or either of the grounds of negligence alleged?

Plaintiffs in error's first proposition is to the effect that defendant's agents at Texarkana were guilty of negligence in not notifying Mrs. Latimer of the departure of the first train from that place for Commerce by reason of which it is claimed she was compelled to remain at Texarkana all day and make the trip to Commerce at night. There was no error in refusing to submit this question to the jury. Defendant in error did not owe Mrs. Latimer the duty, without inquiry on her part, of informing her when its train would depart for Commerce, and the failure to do so did not constitute actionable negligence, although as a result thereof she missed the first train and was compelled to remain in Texarkana awaiting the departure of its next train. Besides, it is difficult to conceive how such failure on defendant in error's part could have been the proximate cause of Mrs. Latimer's injury. Nor do we think the court erred in refusing to submit the case to the jury on the theory that defendant in error's servants negligently failed to stop the train upon which Mrs. Latimer was riding, at Mt. Vernon long enough to enable passengers to alight therefrom. As we understand the evidence it was shown practically without contradiction that ample time was afforded all passengers desiring to disembark at Mt. Vernon to do so, by the exercise of ordinary care and diligence, with safety.

Plaintiffs in error's fourth proposition presents the contention that well regulated railroads ordinarily use vestibuled coaches; that defendant in error negligently failed to have such coaches in the train on which Mrs. Latimer was riding, and that if the same had been vestibuled Mrs. Latimer could neither have jumped off nor been thrown from said train and injured; therefore such failure was the proximate cause of Mrs. Latimer's injuries. It is doubtless true that cases may occur in

which injuries received by a passenger in being thrown from a moving train, might be attributed, as the proximate cause thereof, to the failure of the railway company to use vestibuled coaches, but we do not think such a case is presented by the facts disclosed in the record before us. The undisputed evidence in this case shows that if the coaches in the train upon which Mrs. Latimer was traveling had been vestibuled, such condition or equipment would have availed nothing in preventing the injury to her. All the evidence offered upon the subject established beyond controversy the utter impracticability of having vestibuled coaches closed while trains are waiting at or departing from stations. At such times and places the platform approaches to the cars must necessarily be unenclosed in order that passengers may embark and disembark. At the time Mrs. Latimer stepped, fell or was thrown from defendant in error's train at Mt. Vernon, said train was in the act of leaving the station. She had gone to the platform with a view of alighting, and says that while looking for the conductor to assist her off, she was by a sudden lurch or jerk of the train, thrown therefrom. Had the coaches been vestibuled they would have been open at this time, and the railway company could not have been charged with negligence on account thereof. It follows therefore that the accident resulting in Mrs. Latimer's injuries can not reasonably be attributed to the absence of vestibuled coaches, and that if defendant in error is liable in damages for such injuries it must be upon some other ground of negligence alleged.

This brings us to a consideration of plaintiff in error's proposition, that whether Mrs. Latimer negligently stepped from the train and thereby caused her injury, or was, by the negligence of defendant in error's servants operating the train upon which she was riding in causing the same to be moved with a sudden lurch or jerk while she was on the platform of the car looking for the conductor to assist her off, thrown off as alleged, was a controverted question under the evidence for the determination of the jury. The material testimony bearing upon this question is as follows: Mrs. Latimer testified that she saw the conductor after the train left Mt. Pleasant and before it reached Mt. Vernon; that he took up her ticket and she told him that she had four little children; that she had to change cars at Commerce, and that she wanted him to help her, and he replied, "all right, the next station is Commerce, and I will help you"; that she then told the conductor that she meant for him to do it and he told her he would help her when they got to Commerce. That when the conductor told her that the next station was Commerce her children were all asleep, and she "waked them up," and when the train stopped she waited until she gave out the conductor coming to help her off; that she waited until she just supposed the train was waiting for her like all the conductors had been doing; that she waited and the conductor did not come; that when the conductor did not come she raised the children up on their feet and joined their hands together and picked up her baby and satchel and started from the car; that when she came to the end of the car it was standing still, but the conductor was not there; that he was on the far end of the other coach; that she did not see anyone when she went on the platform; that the train was still standing; that she heard somebody halloo to the conductor

to wait that there was a woman and some children that wanted to get off; that she then walked across the platform from one car to the other to see if she could see the conductor, but she did not see him; that she heard someone on the ground halloo again that there was a woman and some children wanted to get off, and to have the train wait; that the train was still standing at that time; that she then started back to the steps to see if she could see the conductor coming with his light and saw the train was moving a little slow; that she thought she had better go back into the coach that she had come out of and wait for the conductor to come and help her, and the train just then gave a sudden jerk and knocked her off, and she fell to the ground; that it was a hard jerk that threw her off. She further testified that before they got to Mt. Vernon a negro announced, in the coach she was in, the station; that he called out "Commerce City, Union Depot"; that she sat there and the train came up and stopped; that she could not tell positively how long she sat there and waited for the conductor, but knows that she sat there five minutes or more.

W. J. McBride testified that he was the conductor having charge of the defendant's train on the night in question; that his run was between Mt. Pleasant and Ft. Worth; that he took up Mrs. Latimer's ticket; that it was a local ticket from Texarkana to Wolfe City; that he punched it and gave it back to her; that there was nothing on the ticket that said she must change cars at Commerce; that he did not tell her after they left Mt. Pleasant and before they reached Mt. Vernon that the next station would be Commerce; that he had been running over the branch between Mt. Pleasant and Ft. Worth by way of Commerce for about 8 years, and was familiar with the stops; that if he had told her between Mt. Pleasant and Mt. Vernon that Commerce was the next station, he would have told her a falsehood; that he told Mrs. Latimer that she would have to change cars at Commerce for Wolfe City.

Prince Carr, a witness for the defendant, testified that he was the train porter on the train that Mrs. Latimer was on and that when the engine whistled for the station of Mt. Vernon he announced the station by calling out in a loud voice, "Mt. Vernon." The conductor testified to the same effect, as also B. T. Tigert, W. C. Shoemaker, Mrs. W. C. Shoemaker and R. C. Jones.

F. W. Hamilton testified that he was riding in the same coach with Mrs Latimer, across the aisle from Mrs. Latimer, and that no one of defendant's employes called out in that coach the name of the station Mt. Vernon; that he was going from Texarkana to Greenville; that when Mrs. Latimer and the children with her tried to get off the train, he went to the west end of the coach to get a drink of water and saw them go out of the coach; that Mrs. Latimer was carrying the baby in her arms; that she did not succeed in alighting from the train, but was thrown off; that he saw her fall from the car to the ground, and a jerk by the engine started the car suddenly, throwing her off; that it was a heavy jerk; that if the train had been moved in the usual way under a gradual increase of steam the jerk would not have occurred; that the steam should be applied gradually in moving out from the station, and that sand should be applied to the track to prevent a jar or jerk; that it was the appliance of too much steam right at the start

which caused the engine to slip and the wheels to slip so that when the throttle was opened it would cause a jerk; that he was an experienced railroad man; that the train was in motion when Mrs. Latimer was thrown off.

A number of witnesses testified for the defendant, in effect that Mrs. Latimer, after being warned by her fellow passengers that she could not then alight, rushed excitedly out of the car in which she was riding and jumped off the platform after the train had stopped at Mt. Vernon and was again put in motion; that there was no lurch or jerk of the train, and that none of the employes of defendant in error knew that Mrs. Latimer desired or intended to get off at Mt. Vernon.

We here have a case of conflicting evidence and of such a character as to require, in our opinion, the submission of the issues involved, under appropriate instruction, to the jury for their determination; and that the failure to so submit them was error for which the judgment of the court below must be reversed and the cause remanded for a new trial. It would be improper for us to discuss, or in any manner intimate, the weight we think should be given to the testimony, and shall not do so. It must suffice for us to say that we do not think the facts are such that all reasonable minds must draw the same conclusion from them. It is only when they are such that the question of negligence is ever considered one of law for the court. It has been often said that the judge is authorized to take the case from the jury only when it is susceptible of but one just opinion; that when a given state of facts is such that reasonable minds may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. We need not cite authorities in support of this rule. It is not questioned by counsel for defendant in error, but it is contended that the evidence was of such a conclusive character as justified the court's action in giving a peremptory instruction to the jury to return a verdict for defendant. After a careful consideration of the evidence we do not agree to this contention, but, as seen, have reached a different conclusion.

There was no error in the admission of the letter purporting to have been written by the witness, F. W. Hamilton, on March 16, 1904. A sufficient predicate had been laid for the introduction of this letter, and it was admissible for the purpose offered.

For the reason stated the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*

Writ of error dismissed for want of jurisdiction.